## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THE SIOUX NATION OF INDIANS[1]**
**(a/k/a "THE OCETI SAKOWIN OYATE")**
**collectively, and THE OGALA SIOUX TRIBE,**
**THE CHEYENNE RIVER SIOUX TRIBE,**
**THE STANDING ROCK SIOUX TRIBE and**
**THE ROSEBUD SIOUX TRIBE individually**

**c/o THE OGALA SIOUX TRIBE**
P.O. Box 2070
Pine Ridge, SD  57770

        Plaintiffs,

vs.

THE UNITED STATES OF AMERICA;

DIRK KEMPTHORNE
SECRETARY OF THE INTERIOR
U.S. Department of the Interior
1849 C Street, N.W.
Washington, DC  20240

JOHN W. SNOW
SECRETARY OF THE TREASURY
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C.  20220

        Defendants.

## COMPLAINT

---

[1] The People of The Seven Council Fires (The Oceti Sakowin Oyate) have historically been referred to by United States Courts as "The Sioux Nation of Indians" (See e.g. United States v. Sioux Nation of Indians 448 U.S. 371 [1980]). The word "Sioux" is understood by many Tribal members to be derived from a French distortion of a Pawnee term that was meant to be derogatory.  We, therefore, respectfully request that the Court identify and refer to Plaintiffs as "The Oceti Sakowin Oyate".

1

Plaintiffs, THE SIOUX NATION OF INDIANS (a/k/a THE OCETI SAKOWIN OYATE collectively) and THE OGALA SIOUX TRIBE, THE CHEYENNE RIVER SIOUX TRIBE, THE STANDING ROCK SIOUX TRIBE, and THE ROSEBUD SIOUX TRIBE, individually, hereby allege, upon information and belief, against Defendants, THE UNITED STATES OF AMERICA, DIRK KEMPTHORNE, Secretary of the Interior of The United States, and JOHN W. SNOW, Secretary of the Treasury of The United States, as follows:

## Statement of the Case[2]

1.       This is a civil action by THE SIOUX NATION OF INDIANS (a/k/a THE OCETI SAKOWIN OYATE collectively) and by THE OGALA SIOUX TRIBE, THE CHEYENNE RIVER SIOUX TRIBE, THE STANDING ROCK SIOUX TRIBE, and THE ROSEBUD SIOUX TRIBE, individually, seeking the issuance, by this Court, of:

> a.  A Declaratory Judgment declaring that the enactment and subsequent enforcing by the Congress of The United States of the Lakota Indian Allotment Act of 1889 (25 Stat. 888 enacted on March 2, 1889) resulted in an unconstitutional seizure of certain lands designated by the United States pursuant to the Treaty of Fort Laramie of 1868 as lands in which Plaintiffs possessed a vested interest which was guaranteed to them by The United States Government and the seizure of which, without the due process of law, by The United States was prohibited by

---

[2] To the extent necessary to grant the relief sought by Plaintiffs herein, Plaintiffs respectfully allege that the lands seized from Plaintiffs included land that was holy to Plaintiffs and essential to the continuity of Plaintiffs' culture. Accordingly, such land was not amenable to taking in exchange for just compensation. In this regard, Plaintiffs note that it may be necessary for this Court to distinguish the matter *sub judice* from precedent including, but not limited to, Lone Wolf v. Hitchcock, 187 US 553 (1903).

2

The Due Process Clause of The Fifth Amendment to The United States Constitution;

b.  A Declaratory Judgment declaring that the ratification and subsequent enforcing by the Congress of the United States of The Treaty of Fort Laramie of April 29, 1868 (15 Stat. 635, Ratifying said Treaty on February 16, 1869) resulted in an unconstitutional seizure of certain lands designated by the United States pursuant to the Treaty of Fort Laramie of 1851 as lands in which the Plaintiffs possessed a vested interest which was guaranteed to them by The United States Government and the seizure of which, without the due process of law, by The United States was prohibited by The Due Process Clause of The Fifth Amendment to The United States Constitution;

c.  A Declaratory Judgment declaring that the ratification and subsequent enforcing by the Congress of the United States of The Treaty of Fort Laramie of 1851 (11 Stat. 749) resulted in an unconstitutional seizure of certain lands designated by the United States pursuant to an 1830 Act of Congress establishing The Permanent Indian Country (Act of May 28, 1830, 4 Stat.411, ch. 148) as lands in which the Plaintiffs possessed a vested interest which was guaranteed to them by The United States Government and the seizure of which, without the due process of law, by the United States was prohibited by The Due Process Clause of The Fifth Amendment to The United States Constitution;

d.  An Affirmative Injunction ordering an accounting, by The United States Department of The Interior, of the Trust Funds of each individual Plaintiff Tribe

3

named herein, and of each other Oceti Sakowin Oyate Reservation Tribe, and an accounting of all actions taken by The Department of The Interior pertaining to the "Tribal Trust Lands" allocated to each Tribe under the Lakota Indian Allotment Act of 1889 (25 Stat. 888 enacted on March 2, 1889);

e. A Court Order dissolving the Trustee status of The United States Department of the Interior with respect to all lands held in trust for each Oceti Sakowin Oyate Reservation Tribe, and directing the transfer of fee simple title of such lands to each said Oceti Sakowin Oyate Tribe; and

f. Such other, further, and different related relief as this Court may deem just and proper with the exception of allowing the Defendant United States to retain title to any lands unlawfully and unconstitutionally seized by The United States upon the mere payment to the Plaintiffs of purported "Just Compensation" for said unlawfully seized lands.

### **Parties**

2.      Plaintiff Oceti Sakowin Oyate is the organization of the Tiospaye (Family); Oshpa (Clan); Band and Sakowin (Council Fire) Leaders of the historic Great Sioux Nation that comprises The Sioux Nation of Indians: these Seven Council Fires being: the Mdewakanton, the Wahpetowan (Wahpeton), the Wahpekute, the Sissetowan (Sisseton), the Ihantowan (Yankton), the Ihanktowana (Yanktonai), and the Teton (Lakota).

3.      Plaintiffs, THE OGLALA SIOUX TRIBE, THE CHEYENNE RIVER SIOUX TRIBE, THE STANDING ROCK SIOUX TRIBE, and THE ROSEBUD SIOUX TRIBE, are

4

federally-recognized Indian tribes residing on federal reservations located within the States of South Dakota and North Dakota, recognized by the United States as sovereign Indian tribes with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of their status as federally-recognized Indian tribes.

4.      Defendant United States is the actor whose conduct complained of in this Complaint resulted in the unlawful seizure of the lands described in this Complaint.

5.      Defendant Dirk Kempthorne is the Secretary of the Interior who is charged by law with carrying out the duties and responsibilities of the United States as Trustee for all Native American Tribes.

6.      Defendant John W. Snow is the Secretary of the Treasury, and in that capacity is custodian of tribal trust funds and has responsibility with regard to the administration of such funds and the preparation and maintenance of records in connection with those funds.

## Jurisdiction and Venue

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362. This is a civil action brought by an Indian Tribe and arises under the Constitution, Treaties and Agreements between the United States and The Tribe, federal common law and the federal statutes governing the administration and management of property seized and held by the United States in trust for tribes. The Court also has jurisdiction under 28 U.S.C. § 1361, 5 U.S.C. §§ 702, 706, as this is an action for injunctive relief to compel federal officials to perform a duty owed to the Plaintiffs.

8.          This Court has jurisdiction to grant the relief requested herein pursuant to the

authority granted to The District Court by Congress in its enactment of The Federal Declaratory

Judgment Act (Title 28 U.S.C. Section 2201 & 2202) and 28 U.S.C. § 1361, 5 U.S.C. §§ 702,

706, as this is an action for injunctive relief to compel federal officials to perform a duty owed to

the Plaintiff.

9.          Venue is properly in this District under 28 U.S.C. §1391(e) because this is an

action in which the Defendants are officers and employees of the United States acting in an

official capacity, and a substantial part of the events or omissions giving rise to the claims herein

have occurred within this Judicial District.

## Background

10.         Prior to the year 1781, Plaintiffs, and/or their predecessors in interest, asserted

and exerted sole and exclusive custody and control over approximately ninety million

(90,000,000) acres of land that included all of what is today known as the State of South Dakota;

large portions of what is today known as the State of North Dakota; significant portions of what

is today known as the States of Wyoming and Montana; and portions of what is today the States

of Minnesota, Iowa and Nebraska.

11.         In 1787 the Government of the United States, functioning under The Articles of

Confederation, enacted The Northwest Ordinance of 1787 "securing the economic interests of

the United States in The Sioux Territory" and setting forth the express commitment of the United

States Government to "always observe the utmost good faith toward the Indians" and promising

that their property would never be taken from them without their consent, and that in their

property, rights, and liberty, the Lakota People were never to be invaded or disturbed unless in

6

just and lawful wars, authorized by Congress and laws founded in justice and humanity, as shall, from time to time, be made for preventing wrongs being done to them and for preserving peace and friendship with them.

12.      In an 1830 Act of Congress establishing The Permanent Indian Country (Act of May 28, 1830, 4 Stat.411, ch. 148), the United States Congress designated a "Permanent Indian Country reserved for the sole occupancy and use of the aboriginal people" the eastern boundary of which was fixed by Congress at the Mississippi River along the western boundaries of Louisiana, Arkansas, Missouri, Iowa and Minnesota, promising that all 90,000,000 acres of the Traditional Sioux Territory that belonged to the Plaintiffs that lay west of this boundary would remain Plaintiffs' secure and undisturbed home "for as long as the grass shall grow and the water run."

13.      Notwithstanding the aforementioned official United States Government commitments, on or about June 15, 1845, the United States Government dispatched United States Army Colonel S.W. Kearney and five companies of armed United States soldiers to the Laramie Fork of the Platte River, an area within the previously established "Permanent Indian Country" and at all times relevant herein and specifically between 1845 and 1851, the United States Government permitted citizens of the United States to trespass on the Permanent Indian Country.

14.      In or about 1851, the United States appointed Thomas Fitzpatrick and David Dawson Mitchell to enter into a lawfully binding Treaty with The Sioux Nation.

15.      In or about 1851, Messers. Fitzpatrick and Mitchell entered into the Treaty of Fort Laramie of 1851 on behalf of the Government of the United States and purported to reduce the

size of the "Permanent Indian Country" recognizing Sioux Dominion over only sixty million (60,000,000) acres of the 90,000,000 acres of The Great Sioux Nation, from Missouri on the east to beyond the Black Hills, and from the Platte River north to the Heart River.

16.     In this Treaty of Fort Laramie of 1851, the United States Government, however, expressly recognized the absolute right of the "Western Band" of The Sioux Nation (i.e. of the Teton Council Fire of The Oceti Sakowin Oyate ) to the sole and exclusive custody and control over all of their traditional Lands west of The Missouri River, including all of what is now the State of South Dakota and specifically-identified portions of what are now the States of Montana, Wyoming, North Dakota, and Nebraska as being reserved for the perpetual sole and exclusive occupancy and use by The Great Sioux Nation.

17.     The Treaty of Fort Laramie of 1851, however, was neither accepted by the Plaintiffs' predecessors in interest, nor by authorized agents on their behalf.

18.     In or about 1868, the United States, using improper means, including but not limited to fraud, deceit and the intentional starvation of members of the Oceti Sakowin Oyate Nation, procured, by means of coercion, the Treaty of Fort Laramie of 1868.

19.     The Treaty of Fort Laramie of 1868, *inter alia*, required that the members of The Oceti Sakowin Oyate  Nation confine their homes to an area described as "The Great Sioux Reservation of 1868."

20.     The Great Sioux Reservation of 1868 encompassed all of present day South Dakota west of the Missouri River "for the absolute and undisturbed use and occupancy of the Sioux."

21.      To the north and west of this permanent Great Sioux Reservation of 1868, the

Treaty of Fort Laramie of 1868 (in Article 16) designated the land "north of the North Platte

River and east of the summits of the Big Horn Mountains" as "unceded Indian territory" where

no white man could set foot without Indian consent.

22.      Most significantly, Article 12 of the Treaty of Fort Laramie of 1868 expressly

provided that no future diminishment of The Great Sioux Reservation of 1868 would be valid or

enforceable against The Great Sioux Nation unless the Government of the United States

collected and certified the ratifying signatures of three-fourths of all adult male members of The

Sioux Nation of Indians.

23.      This explicit Agreement notwithstanding, in or about 1889, the Government of

the United States, by means of an Act commonly referred to as the General Allotment Act,

subdivided out, from approximately one-fifth of The Great Sioux Reservation of 1868, six

separate "Reservations" and, without the consent of three-fourths of the adult male members of

The Sioux nation of Indians, unilaterally seized the remaining four-fifths of The Great Sioux

Reservation of 1868.

24.      The 1889 seizure of Oceti Sakowin Oyate lands by the Defendant United States

was not authorized by three-fourths of all adult Sioux males, constituted a breech by the United

States of the Treaty of 1868, and was an improper, unlawful and unconstitutional seizure of

Oceti Sakowin Oyate land in violation of The Due Process Clause of The Fifth Amendment to

The United States Constitution.

25.      The seizure of the Oceti Sakowin Oyate lands as described herein violated the

fundamental principles upon which the United States was founded and upon which the United

9

States declared its separation from England. It violated the very principles upon which the

United States exists today, and particularly the Declaration of Independence which expressly

provides that

> We hold these truths to be self-evident, that **all men** are
> created equal, that they are endowed by their Creator with
> certain unalienable Rights, that among these are Life,
> Liberty and the Pursuit of Happiness (emphasis added)

26.        Approximately one-fifth of the land that was the subject of the 1889 Act was

placed "in trust" under the control of the United States Government as its Trustee.

27.        Members of Oceti Sakowin Oyate (known to The Court as The Sioux Nation of

Indians) occupy some 21 "Reservations" in the United States and Canada, *among which are:*

The PINE RIDGE RESERVATION in South Dakota; The CHEYENNE RIVER

RESERVATION in South Dakota, The ROSEBUD RESERVATION in South Dakota, and The

STANDING ROCK RESERVATION in South Dakota and North Dakota (all of which were

"created" by the 1889 Act), and these United States Government "recognized" Tribes are the

beneficial owners of the land and natural resources, including valuable oil, gas, water and other

mineral reserves, within said "Reservation" boundaries established by The 1889 Act, title to

which is, however, held in trust by the United States for the benefit of said Tribes. These Tribe's

lands also include land valuable for grazing and agricultural purposes.

28.        Under Federal Law, Tribal Land held in trust by the United States is inalienable

except as authorized by Congress. 25 U.S.C. §177. Congress has granted the Secretary of the

Interior authority to approve conveyances of certain interests in said trust lands, such as leases,

easements, and rights of way. Federal Law further establishes the terms and conditions under

which such conveyances may be made, and requires that "just compensation" be paid to each

Tribe for the "use" of their Tribal Trust lands authorized by the Defendant United States Secretary of The Interior.

29.     By various Acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from Tribal Trust Property and directed the Secretary of the Interior to deposit such Trust Income in the United States Treasury and other depositary institutions for the benefit of the Tribe for whose benefit said lands were held in trust by The United States. E.g. Act of March 3, 1883, c 141§ 1, 22 stat. 590.

30.     By subsequent statutes, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See e.g. Act of February 12 1929, c. 178, 45 Stat. 1164, codified as amended, 25 U.S.C § 161b; Act of June 24, 1938, 52 Stat. 1037, codified as amended, 25 U.S.C§162a.

31.     Defendants assumed and exercised unilateral control and management over said Trust Property of each Oceti Sakowin Oyate Tribe. Defendant Secretary of the Interior has approved leases, easements and grants of other interests in said trust lands of each Oceti Sakowin Oyate Tribe since 1889, and both Defendants have assumed responsibility for collection, deposit and investment of the income generated by said Tribal Trust Land of each Oceti Sakowin Oyate Tribe. These include funds generated by oil and gas bid deposits, bonuses, rents, lease and royalty payments, grazing and agricultural leases, and judgments paid to the Tribe.

32.     Because the United States holds said Tribal Trust Land in trust, it has assumed the obligations of a trustee. United States v. Mitchell, 463 U.S. 206, 225 (1983); Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001).

33.    As trustee, the United States has a fiduciary relationship and obligations of the highest responsibility and trust to administer the trust with the greatest skill and care possessed by the trustee. The United States "'has charged itself with moral obligations of the highest responsibility and trust in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" Cobell 240 F.3d at 1099 (quoting Seminole Nation v. United States, 316 U.S. 286, 297 (1942)).

34.    The trust obligations of the United States include, among other duties, the duty to ensure that said Tribal Trust Property and Trust Funds are protected, preserved and managed so as to produce a maximum return to the tribal owner consistent with the trust character of the property.

35.    The trust obligations of the United States include, among other duties, the duty to maintain adequate records with respect to the Tribal Trust Property; to maintain adequate systems and controls to guard against error or dishonesty; to provide regular and accurate accountings to the Trust Beneficiaries; and to refrain from self-dealing or benefiting from the management of the Tribal Trust Property.

36.    Indeed, the Congress of the United States has expressly charged the Defendants with fulfilling the obligation of the United States as Trustee of these Tribal trust lands and with responsibility for the full and honest administration and management of all said Tribal Trust Property of each Oceti Sakowin Oyate Tribe.

37.    Defendants control all of the books and records of account affecting trust funds and trust property.

38.      Defendants have never rendered an audit or accounting to any Oceti Sakowin Oyate Tribe for its trust monies.

39.      Defendants have further failed to establish any effective system or provision for regular or periodic accounting for the Tribal Trust Property and Trust Funds of any Oceti Sakowin Oyate Tribe.

40.      Defendants have kept and continue to keep each Oceti Sakowin Oyate Tribe, as the Trust Beneficiary, uninformed as to the Tribal Trust Property it owns; what income said Tribal Trust Property has produced, and what disposition has been made of any income generated by said Tribe's Tribal Trust Property.

41.      The United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, have concluded that there are massive and long-standing problems with the Defendants' administration of Indian trust funds.

42.      Congress issued a report condemning the practices of the Department of the Interior's management of Indian trust funds. See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust fund, H.R. Rept. No, 102-499, 102d Cong. 2d Sess. (1992).

43.      Specifically, Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities and to prudently manage the trust funds [Id. At 2] . . .

13

> The Bureau has repeatedly ignored directives to undertake needed management reform measures. [Id. At 3] . . .
>
> As a result of this dismal history of inaction and incompetence, there is no assurance that the Bureau actually desires to, or will, make any substantial advancement toward rectifying the basic financial management failures brought to their attention. Despite a decade of initiatives, the Bureau's headquarters, leadership and accountability continue to be woefully inadequate. . .
>
> It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its financial management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of native American tribes and a source of income to tens of thousands of native Americans. [Id. at 5].

Congress further found the Defendants' administration of Indian trust funds to be:

> grossly inadequate in numerous important respects. The Bureau [of Indian Affairs] has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful periodic statements on their balances. It cannot consistently and prudently invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the Bureau of Indian Affairs, the Indian trust fund is equivalent to a bank that doesn't know how much money it has.

Id. at 56.

44.        Upon information and belief, Defendants' mismanagement of trust funds has

resulted in losses to each Oceti Sakowin Oyate Tribe, as Trust Beneficiary. The extent of such

losses is unknown to Plaintiffs because Defendants have failed to provide any Oceti Sakowin

Oyate Tribe with an accounting of its Tribal Trust Funds, and further have failed to maintain

accurate books and records of account, have lost and destroyed relevant trust account records,

failed or refused to disclose known losses to the trust beneficiaries, failed or refused to reimburse

trust beneficiaries for losses to their trust funds. See Misplaced Trust, H.R. Rept. No, 102-499 at
37-41.

45.        By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress
imposed two requirements on Defendants:  1) that they audit and reconcile Tribal Trust Funds
and 2) that they provide each Trust Tribe with a full accounting of such Tribal Trust Funds.
Congress reaffirmed the two mandates of the 1987 Act in subsequent statutes, namely the Act of
October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L No.
11-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990.
By these Acts, Congress further required that the Defendants certify, through an independent
party, the results of the reconciliation of Tribal Trust Funds as the most complete reconciliation
possible of such funds.

46.        To protect the rights of Tribes until accountings of their Tribal Trust Funds could
be completed, Congress has provided, in each Interior Department Appropriations Act since
1990 that "the statute of limitations shall not commence to run on any claim concerning losses to
or mismanagement of trust funds until the affected tribe or individual Indian has been furnished
with an accounting of such funds from which the beneficiary can determine whether there has
been a loss." See Act of November 5, 1990, Pub. L No. 101-512, 104 Stat. 1915; Act of
November 13, 1991, Publ. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No.
102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of
September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Publ. L. No.
104-134, 110 Stat. 1341; Act of September 30, 1996, Pub. L. No. 104-208, 110 stat. 3009; Act of
November 14, 1997, Pub. L. No. 205-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No.
105-277, 112 Stat. 2681; Act of November 29, 1999, Pub L. No. 106-113 Stat. 1501; Act of

15

October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No.

107-63.

47.    On October 25, 1994, Congress enacted the American Indian Trust Fund

Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under this Act, Congress

recognized the United States' pre-existing trust responsibilities, and charged the Defendants with

additional responsibilities to ensure proper discharge of the trust responsibilities, and charged the

Defendants with additional responsibilities to ensure proper discharge of the trust responsibilities

of the United States. These include the duty to provide periodic, timely accountings of trust fund

to tribal and individual Indian beneficiaries, and the duty to cause an annual audit of all trust

funds to be conducted. 25U.S.C. §4011; 25 U.S.C. §162a(d).

48.    As evidenced by reports issued by Interior Department Inspector General, the

General Accounting Office, and the Office of Management and Budget, among others,

notwithstanding the foregoing Acts of Congress, Defendants have continued to fail to implement

the reforms required by law. The Defendants' continued failure to implement reforms required

by Congress and to provide timely and meaningful accountings to the Individual Indian Land

Allottees who received individual land allotments from The Acts of 1887 and 1889 is now the

subject of pending litigation in federal court, Cobell v. Norton, No. 96-1285 (D.D.C.). The

proceedings in that case, which are focused on trust accounts of Individual Indian Land

Allottees, establish the Defendants' breach of those obligations to The Oceti Sakowin Oyate

Tribes as well by the Defendants' failing to account. See Cobell v. Babbitt, 91 F. Supp. 2d

1(D.D.C. 1999), aff'd sub norm Cobell v. Norton 240 F. 3d 1081 (D.C. Cir. 2001).

49.      To date, the Defendants have failed to provide any Oceti Sakowin Oyate Tribe with an accounting of said Tribe's Tribal Trust Funds.

50.      Moreover, to date, since 1889, the Defendant United States has unilaterally held out of the custody, control and occupancy of The Sioux Nation of Indians (Oceti Sakowin Oyate) and each member Band, Clan and Tiospaye thereof the "Remainder" four-fifths of The Great Sioux Reservation of 1868 that was unilaterally, unlawfully and unconstitutionally seized by the Defendant United States pursuant to The Act of 1889.

51.      Moreover, to date, since 1868, the Defendant United States has unilaterally held out of the custody, control and occupancy of The Sioux Nation of Indians (Oceti Sakowin Oyate) and each member Band, Clan and Tiospaye thereof the physical territory that was guaranteed to be preserved for their sole and exclusive peaceful permanent occupancy by The Treaty of Fort Laramie of 1851 (ratified by Congress on February 16, 1869 as 15 Stat. 635).

52.      Finally, to date, since 1851, the Defendant United States has unilaterally held out of the custody, control and occupancy of The Sioux Nation of Indians (Oceti Sakowin Oyate) and each member Band, Clan and Tiospaye thereof the 30,000,000 acres of Traditional Sioux Nation Territory that was guaranteed to be preserved for their sole and exclusive peaceful permanent occupancy by previous Congressional actions in 1825 and 1830, the latter being The Act of Congress Establishing The Permanent Indian Country (Act of May 28, 1830, 4 Stat.411, ch. 148).

## Count I
## Declaratory Judgment regarding the1889 Act of Congress

17

53.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 52 above.

54.    The enactment and subsequent enforcing, by the Congress of The United States, of The General Allotment Act of 1889 constituted an unconstitutional seizing of four-fifth of the land designated by The United States in The Treaty of Fort Laramie of 1868, as "The Great Sioux Reservation."

55.    Said unconstitutional taking was in violation of the Due Process Clause of The Fifth Amendment to The Constitution of The United States.

56.    The aforementioned unconstitutional seizure by The United States Government is null and void and of absolutely no legal effect whatsoever.

57.    Plaintiffs, from whom The Great Sioux Reservation of 1868 Lands were unconstitutionally and unlawfully seized by The United States Government in 1889, are lawfully entitled to the Issuance of a Declaratory Judgment declaring that the United States Government is obligated to transfer Fee Simple title of said "Great Sioux Reservation of 1868" lands back to Plaintiff Oceti Sakowin Oyate.

58.    Plaintiffs, from whom said Great Sioux Reservation of 1868 lands were unconstitutionally and unlawfully seized by The United States Government in 1889, are lawfully entitled to the Issuance of a Declaratory Judgment declaring that the United States Government is obligated to pay Plaintiffs the total rental value of the lands taken from them within the boundaries of The Great Sioux Reservation of 1868 from the date of the enactment by Congress

18

of The Allotment Act of 1889 up to and including the date of the delivery of Fee Simple title of

said Great Sioux Reservation Lands to The Plaintiff Oceti Sakowin Oyate.

### Count II

### Declaratory Judgment regarding the1868 Treaty

59.        Plaintiffs repeat and incorporate by reference the allegations contained in

paragraphs 1 through 58 above.

60.        The ratification and subsequent enforcing, by the Congress of The United States,

of The Treaty of Fort Laramie of 1868 constituted an unconstitutional seizure of the land

recognized by The United States, in The Treaty of Fort Laramie of 1851, as The Territory of The

Sioux Nation of Indians except for that portion of said land identified and delineated in the

Treaty of Fort Laramie of 1868 as "The Great Sioux Reservation of 1868."

61.        Said unconstitutional taking was in violation of the Due Process Clause of The

Fifth Amendment to The Constitution of The United States.

62.        The aforementioned seizure of said land by The United States Government is null

and void and of no legal effect.

63.        Plaintiffs, from whom said Territory of The Sioux Nation of Indians was

unconstitutionally and unlawfully seized by The United States Government in 1868, are lawfully

entitled to a Declaratory Judgment declaring that the United States Government is obligated to

transfer Fee Simple title of said territory to the Plaintiff Oceti Sakowin Oyate.

19

64.     Plaintiffs, from whom said Territory of The Sioux Nation of Indians were unconstitutionally and unlawfully seized by The United States Government in 1868, are lawfully entitled to the Issuance of a Declaratory Judgment declaring that the United States Government is obligated to pay the Plaintiff Oceti Sakowin Oyate the full rental value of said Territory of The Sioux Nation of Indians from the date of the ratification by Congress of The Fort Laramie Treaty of 1868 up to and including the date of the delivery of Fee Simple title of all of said Territory to the Plaintiff Oceti Sakowin Oyate.

### Count III

### Declaratory Judgment regarding the1851 Treaty

65.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 64 above.

66.     The ratification and subsequent enforcing, by the Congress of The United States, of The Treaty of Fort Laramie of 1851 constituted an un-constitutional seizure of 30,000,000 acres of lands that were the Traditional Aboriginal Territory of the Sioux Nation of Indians as recognized by the United States Government in 1825 Acts of Congress as well as The Act of 1830, the latter being The  Act of Congress Establishing The Permanent Indian Country (Act of May 28, 1830, 4 Stat.411, ch. 148).

67.     Said unconstitutional seizure in 1851 was in violation of the Due Process Clause of The Fifth Amendment to The Constitution of The United States.

68.     Said 1851 seizure by The United States Government is null and void and of absolutely no legal effect.

20

69.        Plaintiff Oceti Sakowin Oyate, from whom said Traditional Aboriginal Territory was unconstitutionally and unlawfully seized by The United States Government in 1851, are lawfully entitled to a Declaratory Judgment declaring that the United States Government is obligated to transfer Fee Simple Title of territory back to the Plaintiff Oceti Sakowin Oyate.

70.        Plaintiff Oceti Sakowin Oyate, from whom said territory was unconstitutionally and unlawfully seized by The United States Government in 1851, are lawfully entitled to a Declaratory Judgment declaring that the United States Government to is obligated to pay to the Plaintiff Oceti Sakowin Oyate the rental value of said 30,000,000 acre territory from the date of the ratification by Congress of The Fort Laramie Treaty of 1851 up to and including the date of the delivery of Fee Simple Title of said Territory to the Plaintiff Oceti Sakowin Oyate.

### Count IV

### Declaratory Judgment Regarding Accounting

71.        Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 70 above.

72.        Defendants owe each Oceti Sakowin Oyate Tribe a fiduciary duty and obligations of the highest responsibility and trust to administer said Tribe's Tribal Trust Property and Tribal Trust Funds with the greatest skill and care possessed by the Trustee.

73.        Defendants' fiduciary duties include, among others, the duty to provide each said Oceti Sakowin Oyate Tribe with a full and complete accounting of said Tribe's Trust Funds.

21

74.     Defendants have failed to provide any Oceti Sakowin Oyate Tribe with an accounting of said Tribe's Trust Funds, and this failure is a breach of Defendants' fiduciary duties to said Tribe in violation of federal law.

75.     Each Oceti Sakowin Oyate Tribe is entitled to a Declaratory Judgment declaring that the Defendants have not provided that Oceti Sakowin Oyate Tribe with a full and complete accounting of said Tribe's Trust Funds as is required by law.

### Count V
### Injunction Compelling an Accounting

76.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraph 1 through 75 above.

77.     Defendants' continuing failure to provide any Oceti Sakowin Oyate Tribe with complete and accurate accountings of its Trust Funds will cause that Oceti Sakowin Oyate Tribe irreparable injury, as records necessary for proper accounting have been, and many continue to be, lost or destroyed, depriving said Tribe of the information essential to determining whether the Tribe's Trust Funds have been properly administered.

78.     Each said Oceti Sakowin Oyate Tribe is entitled to declaratory and injunctive relieve requiring Defendants to provide to each said Oceti Sakowin Oyate Tribe with a full and complete accounting of all said Tribe's Trust Funds.

### Count V

### Dissolution of Trust

79.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraph 1 through 78 above.

80.    Defendants have failed, and continue through the present day to fail, to properly administer the Tribal Trust Property belonging to the Tribes of The Sioux Nation of Indians held in trust by the defendants for the benefit of the Plaintiffs.

81.    Defendants' grossly negligent and/or intentional continued mismanagement of the Oceti Sakowin Oyate Tribal Trust Property held in trust by them for the benefit of Plaintiffs cannot be effectively remedied by the United States Courts.

82.    Therefore, the Trust established by the United States Government in 1889 for the purpose of administering lands belonging to Plaintiffs should be dissolved and the Trust Property returned to the Oceti Sakowin Oyate.

**WHEREFORE**, Plaintiffs pray for:

1.        A Declaratory Judgment declaring that the enactment and subsequent enforcing by the Congress of The United States of the Lakota Indian Allotment Act of 1889 resulted in an unconstitutional seizure of certain lands designated by the United States pursuant to the Treaty of Fort Laramie of 1868 as perpetually belonging to the Plaintiff Sioux Nation of Indians (Oceti Sakowin Oyate);

2.        A Declaratory Judgment declaring that the ratification and subsequent enforcing by the Congress of The Treaty of Fort Laramie of 1868 resulted in an unconstitutional seizure of certain lands designated by the United States pursuant to the Treaty of Fort Laramie of 1851 as perpetually belonging to the Plaintiff Sioux Nation of Indians (Oceti Sakowin Oyate);

3.        A Declaratory Judgment declaring that the ratification and subsequent enforcing by the Congress of The Treaty of Fort Laramie of 1851 resulted in an unconstitutional seizure of 30,000,000 acres of lands designated by the United States as The Traditional Aboriginal Territory of the Sioux Nation of Indians in 1825 Acts of Congress and The 1830 Act of Congress;

4.        A Declaratory Judgment declaring that the Defendants have not provided the Plaintiff individual Oceti Sakowin Oyate Tribes or any other Oceti Sakowin Oyate Tribe with a full and complete accounting of Plaintiff trust funds as required by law;

5.        An injunction mandating that the Defendants provide a full and complete accounting of the Tribal Trust Lands belonging to each individual Plaintiff Oceti Sakowin Oyate

Tribe and to all other Oceti Sakowin Oyate Tribes as well as a full and complete accounting of each Oceti Sakowin Oyate Tribe's tribal Trust Funds;

6.      A Court Order dissolving the Trustee status of The United States Department of the Interior with respect to all lands held in trust for each Oceti Sakowin Oyate Tribe, and directing the transfer of fee simple title of such lands to that Oceti Sakowin Oyate Tribe; and

7.      Such other, further, and different related relief as this Court may deem just and proper with the exception of allowing the Defendant United States to retain title to any lands unlawfully and unconstitutionally seized by The United States upon the mere payment to the Plaintiffs of purported "Just Compensation" for said unlawfully seized lands and in particular for the Black Hills Lands commonly referred to as the subject of "Dockets 74a and 74b".

DATED THIS 3rd day of January 2007.

**McCarter & English, LLP**

By: *Daniel J. Kelly*
        Daniel J. Kelly
        District of Columbia Bar # 397795
        Attorneys for Plaintiffs
        225 Franklin Street
        Boston, MA 02110
        Phone: 617.345.7000
        Fax: 617.345.7050

Of Counsel:

**The Lakota Peoples' Law Office**
Daniel P. Sheehan, Esq.
The Carnegie Library Building
145 N. Chicago Street
Hot Springs, South Dakota 57747
Tel.: 605.745.4275
Fax: 605.745.5786

**McCarter & English, LLP**
Eugene R. Scheiman, Esq.
Robert S. Bernstein, Esq.
245 Park Avenue
New York, NY 10167
Tel.: 212.609.6800
Fax: 212.609.6921

ME1\6065516.2

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The Sioux Nation of Indians, et al. | The United States of America, et al. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Daniel J. Kelly, Esq.
McCarter & English, LLP
225 Franklin Street
Boston, MA 02110
Phone: 617.345.7000

ATTORNEYS (IF KNOWN)

---

### II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ◉ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

---

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities- Employment ☐ 446 Americans w/Disabilities- Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⦿ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 USC § 1331 and 1362 action relating to property wrongfully seized and held by the U.S. Government and an accounting with respect thereto.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in complaint
**JURY DEMAND:** YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  1/3/07                SIGNATURE OF ATTORNEY OF RECORD  _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

The Sioux Nation of Indians ("a/k/a The Oceti Sakowin Oyate" and/or "Lakota")
collectively, and The Ogala Sioux Tribe, The Cheyenne River Sioux Tribe, The
Standing Rock Sioux Tribe and the Rosebud Sioux Tribe individually

c/o The Ogala Sioux Tribe
P.O. Box 2070
Pine Ridge, SD 57770

**SUMMONS IN A CIVIL CASE**

V.

The United States of America

Dirk Kempthorne
Secretary of the Interior

John W. Snow
Secretary of the Treasury

CASE NUMBER:

TO: (Name and address of Defendant)

Jeffrey A. Taylor, USA
United States Attorney's Office
for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Daniel J. Kelly, Esq.
McCarter & English, LLP
225 Franklin Street
Boston, MA 02110

an answer to the complaint which is served on you with this summons, within _____60_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

CLERK                                          DATE

(By) DEPUTY CLERK

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

G   Served personally upon the defendant. Place where served: _____

G   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
     discretion then residing therein.

     Name of person with whom the summons and complaint were left: _____

G   Returned unexecuted: _____

G   Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                  Date                  *Signature of Server*

                                   _____
                                     *Address of Server*

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

The Sioux Nation of Indians ("a/k/a The Oceti Sakowin Oyate" and/or "Lakota")
collectively, and The Ogala Sioux Tribe, The Cheyenne River Sioux Tribe, The
Standing Rock Sioux Tribe and the Rosebud Sioux Tribe individually

c/o The Ogala Sioux Tribe
P.O. Box 2070
Pine Ridge, SD 57770

V.

The United States of America

Dirk Kempthorne
Secretary of the Interior

John W. Snow
Secretary of the Treasury

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

TO: (Name and address of Defendant)

Dirk Kempthorne
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Daniel J. Kelly, Esq.
McCarter & English, LLP
225 Franklin Street
Boston, MA 02110

an answer to the complaint which is served on you with this summons, within _____ 60 _____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

CLERK                                                          DATE

(By) DEPUTY CLERK

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

G   Served personally upon the defendant. Place where served:

G   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

G   Returned unexecuted:

G   Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                     Date                    *Signature of Server*


                            _____
                            *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

The Sioux Nation of Indians ("a/k/a The Oceti Sakowin Oyate" and/or "Lakota")
collectively, and The Ogala Sioux Tribe, The Cheyenne River Sioux Tribe, The
Standing Rock Sioux Tribe and the Rosebud Sioux Tribe individually

c/o The Ogala Sioux Tribe
P.O. Box 2070
Pine Ridge, SD 57770

**SUMMONS IN A CIVIL CASE**

V.

The United States of America

Dirk Kempthorne
Secretary of the Interior

John W. Snow
Secretary of the Treasury

CASE NUMBER:

TO: (Name and address of Defendant)

John W. Snow
Secretary of the Treasury
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Daniel J. Kelly, Esq.
McCarter & English, LLP
225 Franklin Street
Boston, MA 02110

an answer to the complaint which is served on you with this summons, within _____60_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

G   Served personally upon the defendant. Place where served:

_____

G   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

G   Returned unexecuted:

G   Other (specify):

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                    Date                          *Signature of Server*


_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The Sioux Nation of Indians, et al. | The United States of America, et al. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Daniel Peter Sheehan, Esq.    Of Counsel: Eugene R. Scheiman<br>The Carnegie Library Building        Robert S. Bernstein<br>145 N. Chicago St.                  McCarter & English, LLP<br>Hot Springs, South Dakota  57747    245 Park Avenue<br>605-745-4275                New York, NY  10167<br>605-745-5786               212-609-6800 | |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

⊙ 2 U.S. Government Defendant

O 3 Federal Question
(U.S. Government Not a Party)

O 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| O **A.** *Antitrust* | O **B.** *Personal Injury/ Malpractice* | O **C.** *Administrative Agency Review* | ⊙ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)*<br><br>Claim for relief based on unconstitutional seizure of land. |

| O **E.** *General Civil (Other)* | OR | O **F.** *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 USC §§ 1331 and 1362 action relating to property wrongfully seized and held by the US Government and an accounting with respect thereto.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE  12/28/06   SIGNATURE OF ATTORNEY OF RECORD  *Daniel Sheehan*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.